Filed 2/15/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B269048 |
|     Plaintiff and Appellant, | (Los Angeles County |
| v. |  Super. Ct. No. BA404022) |
| ROBERT MARK DIAZ, | |
|     Defendant and Respondent. | |

APPEAL from an order granting habeas corpus of the Superior Court of Los Angeles County, Craig E. Veals, Judge. Reversed.

Jackie Lacey, District Attorney, Roberta Schwartz and Felicia N. Shu, Deputy District Attorneys, for Plaintiff and Appellant.

Bahar Law Office and Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Respondent.

The People of the State of California appeal from the order granting the petition for writ of habeas corpus filed by Robert Mark Diaz. We reverse the order, and reinstate Diaz's prison sentence of six years.

## BACKGROUND

This is the third time this case has come before us. As we explained on the first occasion—Diaz' direct appeal from his judgment of conviction—a Los Angeles Superior Court jury convicted Diaz of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)).[1] He admitted one prior strike conviction (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and two prior prison terms (§ 667.5, subd. (b)). The superior court sentenced him to a term of six years in prison, including one year for each of his two prior prison terms under section 667.5, subdivision (b). The prior felony conviction underlying one of the section 667.5, subdivision (b) enhancements was a 2009 conviction in San Bernardino Superior Court under former section 666, commonly called petty theft with a prior.

While Diaz's appeal from the judgment was pending, California voters approved Proposition 47, "The Safe Neighborhoods and Schools Act." Proposition 47 reduced certain nonserious, nonviolent felonies, including petty theft with a prior, to misdemeanors, and provided a procedure under section 1170.18, subdivision (f) et seq., for persons who

---

[1] Undesignated section references are to the Penal Code.

2

have completed a felony sentence for such an offense to apply for reclassification of the conviction as a misdemeanor.

Diaz contended that his 2009 felony conviction of petty theft with a prior would be a misdemeanor if Proposition 47 had been in effect at the time of that offense, and that therefore it could not be the basis of an enhancement of his sentence under section 667.5, subdivision (b). He urged us to declare the conviction a misdemeanor and strike the section 667.5, subdivision (b) enhancement. We held defendant's contention that Proposition 47 compelled the striking of his section 667.5, subdivision (b) enhancement was premature, because defendant was required first to file an application in the court of conviction under section 1170.18, subdivision (f) to have his 2009 conviction designated as a misdemeanor. (*People v. Diaz* (2015) 238 Cal.App.4th 1323, 1327-1328 (*Diaz*).) We therefore affirmed the judgment.

Following his appeal, Diaz filed a petition under section 1170.18, subdivision (f) in the San Bernardino Superior Court to redesignate his 2009 conviction of petty theft with a prior as a misdemeanor. The San Bernardino court granted the petition, designated the crime as a misdemeanor, and resentenced defendant to 180 days in county jail with credit for that time.

Defendant then filed a petition for writ of habeas corpus in this court requesting that his section 667.5, subdivision (b) enhancement based on the 2009 conviction be stricken. We issued an order to show cause, returnable in the Los Angeles Superior Court, why the section 667.5, subdivision (b) prior should not be stricken based on the redesignation of the 2009 conviction. After briefing and argument, the

3

superior court granted the petition. The court struck the section 667.5, subdivision (b) prior based on the 2009 conviction, resentenced defendant to five years in state prison, and, based on his presentence credits for 2,276 days, ordered him released from custody. The People appeal from the court's grant of the habeas corpus petition.

## DISCUSSION

The People contend that the reclassification of defendant's 2009 felony conviction of petty theft with a prior as a misdemeanor, which occurred after his original sentence, does not preclude its use to support his section 667.5, subdivision (b) enhancement. We agree. The redesignation under Proposition 47 of a prior felony conviction to a misdemeanor operates prospectively, from the date of the redesignation forward, and not retroactively, as if the conviction always had been a misdemeanor.

The Supreme Court has granted review in several cases that have reached the same conclusion. (See, e.g., *People v. Jones* (2016) 1 Cal.App.5th 221, review granted Sept. 14, 2016, S235901; *People v. Valenzuela* (2016) 244 Cal.App.4th 692, review granted Mar. 30, 2016, S232900; *People v. Williams* (2016) 245 Cal.App.4th 458, review granted May 11, 2016, S233539; *People v. Carrea* (2016) 244 Cal.App.4th 966, review granted Apr. 27, 2016, S233011; *People v. Ruff* (2016) 244 Cal.App.4th 935, review granted May 11, 2016, S233201.)

4

We align ourselves with the reasoning of those decisions, and use it here.[2]

---

[2] To the extent Diaz argues that our decision in his prior appeal and our issuance of an order to show cause on his current petition for writ of habeas corpus "implicitly recognize[d] that Proposition 47 applies to [his] sentence enhancement and requires that it be stricken," he is mistaken. In our prior opinion, we concluded that in light of the plain meaning of section 1170.18, the reasoning of *People v. Flores* (1979) 92 Cal.App.3d 461, on which Diaz relied, did not suggest that we should strike defendant's section 667.5, subdivision (b) prior, and "[w]e express[ed] no opinion whether Flores's reasoning suggest[ed] that a felony conviction which *has been designated* a misdemeanor under section 1170.18, subdivision (k) can be used to support a section 667.5, subdivision (b) enhancement." (*Diaz, supra*, 238 Cal.App.4th at p. 1323.) Nor did we express an opinion on whether *In re Estrada* (1965) 63 Cal.2d 740, another decision on which Diaz relied, or principles of equal protection, would require the striking of Diaz's section 667.5, subdivision (b) enhancement upon the reclassification of the supporting conviction as a misdemeanor. (*Diaz, supra*, 238 Cal.App.4th at p. 1336 ["*Estrada* simply does not apply in the procedural posture of defendant's case," and "even if *Estrada* were construed to apply to the procedural posture of this case, it would not require us to reduce defendant's 2009 conviction to a misdemeanor"]; *id*. at p. 1337 ["whatever merit [Diaz'] equal protection argument might have for someone whose prior conviction has been designated a misdemeanor, the argument does not apply here"].)

Further, our issuance of an order to show cause on his habeas corpus petition was not an implicit determination on the ultimate merits of the petition. It simply reflected a determination that Diaz made a prima facie claim for relief that was not procedurally barred. The issuance of an order to show cause "is largely procedural. It 'does not decide the issues and cannot itself require the final release of the petitioner.' [Citation.] Rather, the writ [or order to show cause] commands the person having custody of the petitioner to bring the petitioner 'before the court or judge before whom the writ is returnable' [citation] . . . and to submit a written return justifying the petitioner's imprisonment or other restraint on the petitioner's liberty." (*People v. Romero* (1994) 8 Cal.4th 728, 738, fn. omitted.)

5

I.    *Statutory Interpretation*

"When we interpret an initiative, we apply the same principles governing statutory construction. We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole.  If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language.  If the language is ambiguous, courts may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure."  (*People v. Superior Court* (*Pearson*) (2010) 48 Cal.4th 564, 571.)

Although Proposition 47 does not expressly so state, its language clearly implies that it has no retroactive effect.  Proposition 47 creates two separate mechanisms for redesignating offenses.  The first applies to a defendant "currently serving a sentence for [that] conviction," and allows for the "recall" of that felony sentence and for resentencing contingent upon a finding that the redesignation will not pose an "unreasonable risk that the [defendant] will commit a new violent felony within the meaning of" section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subds. (a), (b) & (c).)  The second applies to a defendant who has "completed his or her sentence" and allows for re-"designat[ion]" of that offense as a misdemeanor.  (*Id.*, subds. (f) & (g).)  There is no mechanism for resentencing on a felony not affected by Proposition 47, merely because an offense underlying one of its prior conviction enhancements is so affected.  Moreover, Proposition 47 expressly

6

provides that the two mechanisms it creates are exhaustive: "Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act." (§ 1170.18, subd. (n).)

Moreover, Proposition 47 borrows language from section 17 that has a well-defined meaning and that does not grant an offense's redesignation as a misdemeanor retroactive effect. Proposition 47 expressly provides that "[a]ny felony conviction that is recalled and resentenced" under either of the two statutory mechanisms "shall be considered a misdemeanor for all purposes." (§ 1170.18, subd. (k).) This language is identical to the language used in section 17 to describe the effect of a judicial declaration that a wobbler offense—which is punishable as a felony until designated a misdemeanor—is to be considered a misdemeanor. (§ 17, subd. (b)(3) [where a crime is a wobbler, "it is a misdemeanor for all purposes . . . [¶] . . . [¶] [w]hen . . . the court declares the offense to be a misdemeanor".] "[W]hen a wobbler is reduced to a misdemeanor [under section 17], the offense *thereafter* is deemed a 'misdemeanor for all purposes,'" (*People v. Park* (2013) 56 Cal.4th 782, 795, italics added), meaning from that point on. Because "identical language appearing in separate statutory provisions should receive the same interpretation when the statutes cover the same or analogous subject matter" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1269, fn. 6) and because Proposition 47 and section 17 both address the effect to be given the redesignation of a felony as a misdemeanor, we are presumptively obligated to construe the phrase "misdemeanor for all purposes" under Proposition 47 to mean the same

7

as it does under section 17—namely, that a felony offense redesignated as a misdemeanor under Proposition 47 retains its character as a felony prior to its redesignation, and is treated as a misdemeanor only after the time of redesignation.

The recent decision in *People v. Abdallah* (2016) 246 Cal.App.4th 736 (*Abdallah*), supports this conclusion. In *Abdallah,* Proposition 47 was enacted and became effective between the date of the defendant's conviction and sentence. Before sentencing, the trial court redesignated the defendant's prior 2011 conviction of possession of methamphetamine as a misdemeanor under Proposition 47. The court then sentenced defendant to a section 667.5, subdivision (b) enhancement based in part on that prior conviction. (*Id.* at pp. 740-742.) On appeal, the issue presented was "whether, at the time the court sentenced [the defendant] in the present case, [his] original felony conviction in the 2011 case satisfied the fourth requirement of section 667.5, subdivision (b) [that he "did not remain free for five years of both prison custody and the *commission of a new offense resulting in a felony conviction*" (*People v. Tenner* (1993) 6 Cal.4th 559, 563, italics added)], or whether, once the court resentenced [him] on his 2011 conviction, he no longer had committed an offense that 'result[ed] in a felony conviction' within five years of release on parole or discharge from custody for a prior felony conviction (in this case, the 2002 conviction)." (*Abdallah, supra*, 246 Cal.App.4th at pp. 744-745.)

The Court of Appeal held that the trial court's redesignation of the 2011 conviction as a misdemeanor precluded its use for the court's *later*

imposition of a section 667.5, subdivision (b) enhancement. The court reasoned that the "for all purposes" language of Proposition 47 has the same meaning as the identical language in section 17, subdivision (b), which applies to reduction of an alternative felony/misdemeanor ("wobbler') offense to a misdemeanor. Reasoning by analogy from *Park, supra,* 56 Cal.4th 782, which held that reduction of a wobbler conviction to a misdemeanor under section 17, subdivision (b) precluded its use in a later prosecution to enhance the sentence as a prior serious felony conviction under section 667, subdivision (a), the Court of Appeal concluded: "The same logic applies to sections 667.5, subdivision (b), and 1170.18, subdivision (k). Section 667.5, subdivision (b), excludes from the prior prison term enhancement a defendant who has neither committed 'an offense which results in a felony conviction' nor been subject to 'prison custody or the imposition of a term of jail custody . . . or any felony sentence that is not suspended' within five years of release on parole or official discharge from another felony conviction resulting in the defendant's incarceration. Once the trial court recalled [the defendant's] 2011 felony sentence and resentenced him to a misdemeanor, section 1170.18, subdivision (k), reclassified that conviction as a misdemeanor 'for all purposes.' [Citation.] . . . Thus, the trial court erred by imposing the one-year sentence enhancement under section 667.5, subdivision (b)." (*Abdallah, supra*, 246 Cal.App.4th at p. 746.)

Significantly, the court distinguished "recent cases holding that Proposition 47 does not apply retroactively to redesignate predicate offenses as misdemeanors for purposes of imposing sentencing

9

enhancements where the original sentence was imposed before the enactment of Proposition 47.  [Citations.]  Indeed, those cases suggest that where, as here, a prior conviction is no longer a felony at the time the court imposes a sentence enhancement under section 667.5, Proposition 47 precludes the court from using that conviction as a felony merely because it was a felony at the time the defendant committed the offense." (*Abdallah, supra*, 246 Cal.App.4th at p. 747.)

We note as well that the purposes of Proposition 47 suggest that it does not operate retroactively.  Sections 2 and 3 of Proposition 47 state the chief aims—"ensur[ing] that prison spending is focused on violent and serious offenses," "maximiz[ing] alternatives for nonserious, nonviolent crime," and "invest[ing] the savings generated from this act into prevention and support programs in K–12 schools, victim services, and mental health and drug treatment."  (Voter Information Guide, text of Prop. 47, §§ 2, 3, p. 70.)

Also, Proposition 47 does not rebut the statutory presumption that amendments to the Penal Code operate prospectively.  Section 3 provides that "[n]o part of [the Penal Code] is retroactive, unless expressly so declared."  Generally, only an express legislative declaration of retroactivity or "'a clear and compelling implication'" of such will suffice.  (*People v. Alford* (2007) 42 Cal.4th 749, 753.) Proposition 47 contains neither an express declaration nor a clear and compelling implication that a Proposition 47 redesignation should be given retroactive effect.  To the contrary, as we have discussed, the language and purposes of the enactment show that reclassification of an offense should be give only prospective effect.

10

Finally, nothing in section 667.5, subdivision (b), suggests that Diaz is entitled to resentencing. Section 667.5, subdivision (b) provides in relevant part that a "court shall," when imposing a sentence of imprisonment on any felony, "impose a[n additional, consecutive] one-year term for each prior separate prison term or county jail term . . . for any felony." (§ 667.5, subd. (b).) In the past, the Supreme Court commented that "667.5(b) is aimed primarily at the underlying felony conviction, and only secondarily, and as an indicium of the felony's seriousness, at the prior prison term." (*People v. Prather* (1990) 50 Cal.3d 428, 440.) But the court has since taken a different view, noting that "[t]he purpose of [this] enhancement is 'to punish individuals' who have shown that they are "'hardened criminal[s] who [are] undeterred by the fear of prison.'"'" (*In re Preston* (2009) 176 Cal.App.4th 1109, 1115, quoting *People v. Jones* (1993) 5 Cal.4th 1142, 1148; *People v. Fielder* (2004) 114 Cal.App.4th 1221, 1232.) Thus, the enhancement is designed to provide an extra deterrent for criminals who were not deterred by prior terms of imprisonment in prison or in county jail under lengthier felony sentences. The critical factor is thus the fact of imprisonment, not the designation of the offense that led to it.

## II. *Diaz' Authorities*

The decisions on which Diaz' primarily relies—*People v. Flores, supra,* 92 Cal.App.3d 461 (*Flores*), *In re Estrada, supra,* 63 Cal.2d 740 (*Estrada*), and *People v. Conley* (2016) 63 Cal.4th 646 (*Conley*)—do not

compel the conclusion that reclassification of an offense under Proposition 47 should be given retroactive effect.

In *Flores,* the defendant sought to overturn a long-final marijuana possession conviction used to enhance a later drug-related conviction on the basis of subsequent legislation reducing the penalty for marijuana possession crimes and mandating that records of arrests and convictions pertaining to those crimes be destroyed. (*Flores, supra*, 92 Cal.App.3d at pp. 471–472.) *Flores* held the defendant was entitled to the relief. (*Id*. at pp. 473–474.) The court concluded that the Legislature's destruction-of-court-records mandate evinced a clear intent that those records (and the convictions they recorded) not be used to enhance future sentences. (*Ibid*.) No such clear intent exists with Proposition 47.

Diaz's reliance on *Estrada* fares no better. "*Estrada* represents 'an important, contextually specific qualification to the ordinary presumption that statutes operate prospectively: When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date. . . .' [Citation.]" (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1195–1196 (*Hajek*); see *People v. Brown* (2012) 54 Cal.4th 314, 324 [*Estrada* reflects a "reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments"]; *Estrada, supra,* 63 Cal.2d at p. 744 ["[i]f the

amendatory statute lessening punishment becomes effective prior to the date the judgment of conviction becomes final, then . . . it, and not the old statute in effect when the prohibited act was committed, applies."].) In other words, the *Estrada* presumption holds that when a new statute lessens the punishment for a "particular criminal offense" (*Hajek, supra,* 58 Cal.4th at p. 1195) or a "prohibited act" (*Estrada, supra,* 63 Cal.2d at p. 744), it is presumed that the new statute applies to all nonfinal judgments of conviction for that "particular criminal offense" or "prohibited act." Such a judgment is "final" for purposes of the *Estrada* rule when courts on direct review can no longer provide a remedy, including the time within which to petition to the United States Supreme Court for writ of certiorari. (*In re Pine* (1977) 66 Cal.App.3d 593, 594.)

Here, Proposition 47 did not reduce the punishment for the offense (felon in possession of a firearm) Diaz was convicted of in the present case and for which he was serving his sentence until the grant of habeas corpus relief which is the subject of this appeal. Rather, the "particular criminal offense" (*Hajek, supra,* 58 Cal.4th at p. 1195) or "prohibited act" (*Estrada, supra,* 63 Cal.2d at p. 744) for which Proposition 47 reduced the punishment is petty with a prior, the offense of which Diaz was convicted in 2009 and which forms the basis of his prison enhancement. But Diaz's 2009 judgment of conviction for petty with a prior is final. Thus, the *Estrada* presumption simply does not apply. Also, as we have already explained, we find nothing in Proposition 47 to suggest that it applies to preclude using a prior conviction that was

13

final before Proposition 47's effective date as the basis for an enhancement of the sentence for another crime that is not affected by Proposition 47. In our view, the redesignation under Proposition 47 of a prior felony conviction to a misdemeanor operates prospectively, from the date of the redesignation forward, and not retroactively, as if the conviction always had been a misdemeanor.

In the recent decision of *People v. Evans* (2016) 6 Cal.App.5th 894, the court took a different view of *Estrada* and Proposition 47 in the context of a defendant who had obtained a reclassification of the prior offense underlying his section 667.5, subdivision (b) enhancement after he was sentenced, but while his appeal from the judgment on appeal was pending. In that situation, the court in *Evans* reasoned that "Proposition 47 provided a means for [the defendant] to mitigate punishment, and he successfully took advantage of that procedure before his sentence became final. Evan's request that we correct his sentence on appeal therefore does not seek to apply Proposition 47 in a retroactive manner not approved by the voters." (*Id.* at p. 904, fn. omitted.) In a footnote, without discussion, the court stated: "The People contend *Estrada's* holding does not apply here because the sentence for Evans's 2007 felony drug offense [the basis of the section 667.5, subdivision prior] has long been final. The People misunderstand the finality aspect of the *Estrada* analysis. The key date is when the sentence including the enhancement becomes final (i.e., Evans's 2015 sentence), not when the sentence for the offense

14

supporting the enhancement became final." (*People v. Evans, supra,* 6 Cal.App.5th at p. 904, fn. 3.)

We disagree with *Evans'* interpretation of *Estrada* and its effect on Proposition 47. As we have explained, the *Estrada* presumption has a limited scope: when a new statute lessens the punishment for a "particular criminal offense" (*Hajek, supra,* 58 Cal.4th at p. 1195) or a "prohibited act" (*Estrada, supra,* 63 Cal.2d at p. 744), it is presumed that the new statute applies to all nonfinal judgments of conviction *for that "particular criminal offense" or "prohibited act."* As we have also explained, neither the *Estrada* presumption, nor a proper interpretation of Proposition 47, precludes using Diaz' 2009 conviction, which was final before Proposition 47's effective date, as the basis for an enhancement of the sentence for his conviction in the present case of felon in possession of a firearm, which was not affected by Proposition 47.

In addition, we note that *Evans* is factually distinguishable. Unlike the defendant in *Evans,* Diaz did not obtain reclassification of his 2009 conviction while his direct appeal was pending. He did so after his judgment was affirmed on appeal, and he then filed a filed a petition for writ of habeas corpus seeking to have the prison enhancement stricken.

Diaz argues that the discussion of the *Estrada* rule in *Conley* supports application of the *Estrada* rule to his case. We disagree. *Conley* considered *Estrada* in the context of the Three Strikes Reform Act of 2012. "The Reform Act changed the sentence prescribed for a

15

third strike defendant whose current offense is not a serious or violent felony. [Citation.] Under the Reform Act's revised penalty provisions, many third strike defendants are excepted from the provision imposing an indeterminate life sentence [citation] and are instead sentenced in the same way as second strike defendants [citation]: that is, they receive a term equal to 'twice the term otherwise provided as punishment for the current felony conviction' [citation]. A defendant does not qualify for this ameliorative change, however, if [it is pleaded and proven that his current offense is one of certain offenses listed in section 1170.12, subd. (c)(2)(C)(i) – (iv)]. . . . [¶] In the Reform Act, the voters also established a procedure for 'persons presently serving an indeterminate term of imprisonment' under the prior version of the Three Strikes law to seek resentencing under the Reform Act's revised penalty structure. (§ 1170.126, subd. (a).) Under section 1170.126, 'within two years after the effective date of the act . . . or at a later date upon a showing of good cause,' such persons can file a petition for a recall of sentence before the trial court that entered the judgment of conviction. (*Id.*, subd. (b).) If the petitioner would have qualified for a shorter sentence under the Reform Act version of the law, taking into consideration the disqualifying factors (§ 1170.126, subds. (e), (f)), section 1170.126 provides that he 'shall be resentenced pursuant to [the Reform Act] unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety' (*id.*, subd. (f))." (*Conley, supra,* 63 Cal.4th at pp. 652-654.)

16

In *Conley,* while the defendant's appeal from his three strikes judgment was pending, the voters enacted the Reform Act (effective Nov. 7, 2012). The defendant in *Conley*, was "'presently serving an indeterminate term of imprisonment' under the prior version of the Three Strikes law," and thus "under the plain language of the Reform Act, . . . [was] entitled to seek the benefit of the Act's reduced penalties by filing a petition to recall his sentence and requesting resentencing under the new law." (*Conley, supra,* 63 Cal.4th at p. 653, 655.) He contended, however, that under *Estrada,* "he and others whose judgments were not yet final [on appeal] as of the effective date of the Reform Act are entitled to *automatic* resentencing under the revised penalty provisions of the Act, without the need to file a recall petition under Penal Code section 1170.126, and thus without regard to whether the trial court determines that resentencing the defendant would pose 'an unreasonable risk of danger to public safety.'" (*Id.* at pp. 655-656.)

The court reasoned that the Reform Act expressly operates retroactively ("[s]ection 1170.126 creates a special mechanism that entitles all persons 'presently serving' indeterminate life terms imposed under the prior law to seek resentencing under the new law" regardless of whether that sentence is final). (*Conley, supra*, 63 Cal.4th at p. 657.) But because the Reform Act created a "special mechanism for application of the new lesser punishment to persons who have previously been sentenced, and . . . expressly ma[de] retroactive application of the lesser punishment contingent on a court's evaluation of the defendant's dangerousness," the *Estrada* presumption of

retroactivity did not apply to require automatic resentencing. "[T]o confer an automatic entitlement to resentencing under these circumstances would undermine the apparent intent of the electorate that approved section 1170.126: to create broad access to resentencing for prisoners previously sentenced to indeterminate life terms, but subject to judicial evaluation of the impact of resentencing on public safety, based on the prisoner's criminal history, record of incarceration, and other factors." (*Conley, supra*, 63 Cal.4th at pp. 658-659.)

Nothing in *Conley* suggests that the *Estrada* presumption gives Proposition 47 retroactive effect. *Conley* recognized that "[o]ur cases do not 'dictate to legislative drafters the forms in which laws must be written' to express an intent to modify or limit the retroactive effect of an ameliorative change; rather, they require 'that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' [Citations.]" (*Conley, supra*, 63 Cal.4th at pp. 656-657; *id.* at p. 661.) As we have discussed, such intent is clearly manifested in Proposition 47. Indeed, that conclusion is buttressed by *Conley's* analysis. *Conley* relied on the specifics of the resentencing procedures created by the Reform Act to rebut the *Estrada* presumption. Here, we do the same. As we have noted, Proposition 47 creates two separate mechanisms for redesignating offenses. One applies to defendants currently serving a sentence for that offense, and permits "recall" of that felony sentence and resentencing contingent upon a finding that the redesignation will not pose an "unreasonable risk that the [defendant] will commit a new violent felony within the

18

meaning of" section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subds. (a), (b) & (c).) The other applies to a defendant, such as Diaz, who has "completed his or her sentence" and allows for re-"designat[ion]" of that offense as a misdemeanor. (*Id.*, subds. (f) & (g).) Proposition 47 has no mechanism for doing what Diaz seeks by his petition for writ of habeas corpus: resentencing merely because an offense underlying one of his prior conviction enhancements (for which he has already served his sentence) has been redesignated. Moreover, Proposition 47 expressly provides that the two mechanisms it creates are exhaustive: "Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act." (§ 1170.18, subd. (n).) By omitting any procedure that would permit Diaz' resentencing, and by providing that its mechanisms are exhaustive, Proposition 47 clearly signals that it does not have the retroactive effect Diaz seeks.

III. *Equal Protection*

Diaz argues that not striking his section 667.5, subdivision (b) enhancement violates equal protection. As we understand it, he argues that refusing to give a Proposition 47 redesignation retroactive effect creates two classes of defendants: (1) those sentenced now, who are able to avoid enhancements based on prior felony or wobbler convictions (because the redesignations they obtain on those prior convictions apply prospectively) and (2) those sentenced in the past, who are unable to avoid enhancements based on prior felony or wobbler convictions (because the redesignations they obtain on those prior convictions do

19

not apply retroactively). However, the distinction between these two classes is whether the defendants were able to seek redesignation before or after the current sentence was imposed, which in turn is a function of the date Proposition 47 took effect. It is well settled that "'a reduction of sentences only prospectively from the date a new sentencing statute takes effect is not a denial of equal protection.'" (*People v. Floyd* (2003) 31 Cal.4th 179, 189; see also *People v. Smith* (2015) 234 Cal.App.4th 1460, 1468 ["'a statute ameliorating punishment for particular offenses may be made prospective only without offending equal protection'"].) This result makes sense because a classification defined by the date an ameliorative statute takes effect rationally furthers the state's legitimate interest in "assur[ing] that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written." (*In re Kapperman* (1974) 11 Cal.3d 542, 546.)

## DISPOSITION

The orders granting the petition for writ of habeas corpus, striking Diaz' section 667.5, subdivision (b) enhancement, and resentencing him to five years in state prison are reversed. His original sentence of six years in state prison is reinstated.

CERTIFIED FOR PUBLICATION

WILLHITE, J.

I concur:

COLLINS, J.

21

EPSTEIN, P. J., Dissenting.

I respectfully dissent.

The Safe Neighborhoods and Schools Act (Proposition 47), adopted by initiative in 2014, reduced certain drug possession and theft-related offenses from felonies or wobblers to misdemeanors, which carry lower punishment. The initiative created a procedure that allows those who were convicted of a reclassified felony to petition to recall their sentences, even after their sentences have become final, and have their convictions redesignated as misdemeanors and their sentences reduced. (Pen. Code, § 1170.18, subds. (a) & (b);[1] *People v. Rivera* (2015) 233 Cal.App.4th 1085, 1092 (*Rivera*).) Proposition 47 also allows those who have completed their sentences for a reclassified felony to petition the trial court to reduce their prior conviction to a misdemeanor. (§ 1170.18, subds. (f) & (g); *Rivera*, at p. 1093.) The initiative provides that once a felony conviction is recalled and resentenced as a misdemeanor under subdivision (b) or redesignated as a misdemeanor under subdivision (g) of section 1170.18, the conviction "shall be considered a misdemeanor for all purposes," with certain exceptions related to firearms. (§ 1170.18, subd. (k).)

In applying its provisions, the "[a]ct shall be liberally construed to effectuate its purposes." (Ballot Pamp., Gen. Elec. (Nov. 4, 2014) text of Prop. 47, p. 74, § 18.) Beyond that, the common law rule of strict

---

[1] All further undesignated statutory references are to the Penal Code.

construction does not apply to penal statutes. (§ 4.) Criminal statutes are to be "construed . . . with a view to effect its objects and to promote justice." (*Ibid.*) This is particularly true with respect to ameliorative statutes such as this one. Proposition 47 and other penal provisions that are aimed at complex social problems require a practical construction without overrefined inquiries into the meanings of words. "'Reasonable certainty, in view of the conditions, is all that is required, and liberal effect is always to be given to the legislative intent when possible.'" (*People v. Kennedy* (1937) 21 Cal.App.2d 185, 193.) Further, Diaz raises a substantial argument that using a reclassified misdemeanor to support a section 667.5(b) enhancement would violate his constitutional right to equal protection. If reasonably possible, an initiative should be construed in a manner that avoids a serious constitutional question. (See *People v. Engram* (2010) 50 Cal.4th 1131, 1161 and cases cited.)

In this case, the People are appealing the December 3, 2015 order granting respondent Mark Diaz's petition for writ of habeas corpus. The trial court struck a one-year prior prison term enhancement (§ 667.5, subd. (b) (667.5(b))) and resentenced Diaz in light of the August 18, 2015 reduction of the underlying conviction on section 666 to a misdemeanor. My colleagues conclude that Diaz is not entitled to relief because the judgment had become final before the underlying conviction was reclassified. I do not agree. In my view, the judgment was not yet final when the order granting the petition to reduce the prior conviction was filed.

The significance of a final judgment is that "offenders may challenge prison prior enhancements based on reclassified convictions so long as the enhanced sentence is not subject to a final judgment." (*People v. Evans* (2016) 6 Cal.App.5th 894, 903 (*Evans*).) According to *Evans*, if an underlying felony is reclassified as a misdemeanor before there is a final judgment, the enhancement may be stricken under section 1170.18, subdivision (k) and *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*). (*Evans*, at p. 903.)

In determining when the judgment in this case became final, the following dates are relevant:

- May 14, 2013     Defendant was convicted of possession of a firearm by a felon (§ 29800, subd. (a)(1)). (L.A. County Super. Ct. No. BA404022 (this case).)

- February 25, 2014     Defendant was sentenced in this case to a term of six years in prison. He received the midterm of two years, doubled to four years based on a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), with two 1-year prior prison term enhancements under section 667.5(b). One of the section 667.5(b) enhancements was

3

based on a 2009 conviction in San Bernardino of section 666, petty theft with a prior theft-related conviction. (San Bernardino County Super. Ct. No. FVI802222

- April 28, 2014    Defendant filed a notice of appeal from the judgment of conviction in this case. (No. B255951.)

- November 4, 2014    While the B255951 appeal was pending, Proposition 47 was adopted by California voters and took effect the following day, November 5, 2014. (See *Rivera, supra*, 233 Cal.App.4th at p. 1089.)

- July 28, 2015    In the B255951 appeal, we held that we have no authority to provide the relief afforded by Proposition 47 in the first instance, and that Diaz must apply to the sentencing court for relief. (*People v. Diaz* (2015) 238 Cal.App.4th 1323, 1335–1336.)

- August 18, 2015    Pursuant to Proposition 47, the San Bernardino County Superior Court reduced Diaz's prior conviction of

4

section 666 to a misdemeanor and resentenced him in that case to 180 days in county jail with credit for that time.  (No. FVI802222.)

- September 2, 2015    Based on the San Bernardino County Superior Court order granting this relief, defendant filed a petition for writ of habeas corpus in this court (No. B266518), seeking to strike the section 667.5(b) enhancement.

- September 8, 2015    We issued an order to show cause and transferred the habeas petition to the Los Angeles County Superior Court.  We ordered the Director of the Department of Corrections to show cause "before the superior court, when the matter is placed on calendar, why petitioner's sentence enhancement under Penal Code section 667.5(b) should not be stricken and petitioner resentenced in light of the recent reclassification of the underlying crime as a misdemeanor under Penal Code section 1170.18."  We also established a briefing schedule for the

5

written return and the reply.  (No. B266518.)

- October 1, 2015    We issued our remittitur in the No. **B255951** appeal.

- December 3, 2015   The Los Angeles County Superior Court granted Diaz's petition for writ of habeas corpus and struck the one-year section 667.5(b) enhancement based on the order of the San Bernardino County Superior Court reducing the prior section 666 conviction to a misdemeanor.  It then resentenced defendant to five years in state prison, and, based on his 2,276 days of presentence credits, ordered that he be released from custody.

- December 7, 2015   The People filed a notice of appeal from the December 3, 2015 order granting the petition for writ of habeas corpus.  (No. B269048.)

"'A judgment becomes final when the availability of an appeal and the time for filing a petition for certiorari [with the United States Supreme Court] have expired.' [Citation.]" (*Evans*, *supra*, 6 Cal.App.5th at p. 903.)  Rule 13.1 of the United States Supreme Court Rules states that "[u]nless otherwise provided by law, a petition for a

6

writ of certiorari to review a judgment in any case, civil or criminal, entered by a state court of last resort . . . is timely when it is filed with the Clerk of this Court within 90 days after entry of the judgment. A petition for a writ of certiorari seeking review of a judgment of a lower state court that is subject to discretionary review by the state court of last resort is timely when it is filed with the Clerk within 90 days after entry of the order denying discretionary review." The 90-day period may be extended upon a showing of good cause. (U.S. Supreme Court Rules, rule 13.5.)

Assuming that the 90-day period for seeking certiorari review commenced on July 28, 2015 (the date the judgment of conviction was affirmed in the B255951 appeal) and expired on October 26, 2015 (the last date to seek certiorari review without an extension), the judgment became final at the conclusion of that period. The reclassification of the underlying felony occurred on August 18, 2015, before the enhancement was subject to a final judgment. Since "Proposition 47 applies to Section 667.5(b) enhancements in judgments that have not yet become final" (*Evans, supra*, 6 Cal.App.5th at p. 898), Diaz is eligible for relief even though the enhancement was imposed before the effective date of the initiative.

The reason Diaz is eligible for relief is that "when an amendatory statute mitigates punishment, contains no saving clause, and 'becomes effective prior to the date the judgment of conviction becomes final,' then '[that statute] and not the old statute in effect when the prohibited act was committed, applies.' (*Estrada, supra*, 63 Cal.2d at pp. 744, 748.)" (*Evans, supra*, 6 Cal.App.5th at pp. 902–903; see *People*

7

*v. Conley* (2016) 63 Cal.4th 646, 656 [discussing *Estrada*].) This rule, known as the *Estrada* rule, "is based on legislative intent. 'When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply *to every case to which it constitutionally could apply*. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final.' (*Estrada*, *supra*, 63 Cal.2d at p. 745, italics added.) The Supreme Court noted the Legislature could indicate a desire that a defendant be punished under the law in existence at the time the offense was committed by enacting a saving clause spelling out such an intent, but held '[i]f there is no saving clause [the defendant] can and should be punished under the new law.' [Citation.]" (*Evans*, *supra*, 6 Cal.App.5th at p. 903.)

*Evans* applied these principles to the directive in section 1170.18, subdivision (k) that a reclassified offense "shall be considered a misdemeanor for all purposes." Not only was there no "saving clause that would indicate the voters intended offenders should continue being punished under the old law," the plain language of the statute indicated that "the voters intended offenders should be able to avoid punishment for reclassified offenses imposed through Section 667.5(b)

8

enhancements, so long as they are not subject to final judgment. Consistent with this understanding, the statute specifies it does not apply to convictions or sentences that are subject to final judgment. (§ 1170.18, subd. (n) ['Nothing in this and related sections is intended to diminish or abrogate the finality of judgments in any case not falling within the purview of this act'].)" (*Evans*, *supra*, 6 Cal.App.5th at p. 903.)

Viewed in conjunction with subdivision (k) of section 1170.18, *Evans* concluded that the *Estrada* rule authorizes a challenge to a prior prison term enhancement based on a reclassified conviction, provided the enhanced sentence is not subject to a final judgment. (*Evans*, *supra*, 6 Cal.App.5th at p. 903.) Because the defendant's sentence in *Evans* was not yet final when the prior conviction was reduced to a misdemeanor (the reduction was granted while the appeal from the judgment was still pending), there was no risk of applying "Proposition 47 in a retroactive manner not approved by the voters." (*Id.* at p. 904.)

On the surface, this case is distinguishable from *Evans* in that the reduction of Diaz's prior conviction was obtained after (and not during) the completion of the appeal from the judgment (No. B255951). But the difference is not material. The essential point is that in both *Evans* and this case, the order reducing the prior conviction was entered before the enhancement in the present case had become final. (See *Evans*, *supra*, 6 Cal.App.5th at pp. 903–904.)

Because the judgment was not yet final when the prior conviction was reduced to a misdemeanor, striking the enhancement is consistent

9

with the intent of the California electorate.  (*Evans, supra,* 6 Cal.App.5th at p. 904 ["the *Estrada* rule applies to Section 1170.18(k) because Proposition 47 expresses the electorate's determination that we have punished a class of offenders too harshly"].)  In keeping with the *Evans* court's determination that "the benefits of Proposition 47 'should apply to every case to which it constitutionally could apply,' including to pending cases in which the judgment is not yet final" (*Evans,* at p. 904, quoting *Estrada, supra,* 63 Cal.2d at p. 745), I would affirm the order striking the enhancement.


EPSTEIN, P. J.